**RUDOWSKI, et al., Plaintiffs,**

v.

**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL UNION NUMBER 24, et al., Defendant.**

No. C2–99–CV–059.

United States District Court, S.D. Ohio, Eastern Division.

Sept. 12, 2000.

Leonard S. Sigall, Reynoldsburg, OH, for Plaintiffs.

Jerry Alan Spicer, Snyder, Rakay & Spicer, John Robert Doll, Logothetis Pence and Doll, Dayton, OH, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. Introduction

This matter comes before the Court on Defendant Sheet Metal Workers International Association, Local Union No. 24's ("Local 24") Motion for Summary Judg-

---

ment. Defendant asserts that this case presents no genuine issues of material fact and no bases of liability on behalf of Local 24. The Court disagrees, and **DENIES** Defendant's Motion.

## II. Factual Background

The Court has consolidated the captioned case and *Stiltner v. Rudowski*, No. 00cv0398 (S.D. Ohio filed April 3, 2000). The individuals who were Plaintiffs in *Stiltner*—Donald Stiltner, Clyde Pickett, and Chuck Thacker, each of whom is a Trustee of the Local 98 Health and Welfare Fund ("Welfare Fund") and the Local 98 Pension Fund ("Pension Fund")[1]—are now Intervenors here.

The Local 98 Welfare Fund is a multi-employer health and welfare benefit plan. The Welfare Fund is governed by the Health and Welfare Plan and Trust Agreement. The six Trustee positions of the Fund are divided equally between union and management. The Interveners were appointed by the union ("Union Trustees").

The *Rudowski* Plaintiffs are Robert Rudowski, Michael Keller, James Ziegler and Dennis Shuman. Messrs. Rudowski, Ziegler and Shuman are currently Welfare Fund Trustees appointed by management ("Management Trustees"). Mr. Keller is a former (Union) Trustee. The Defendant is Local 24.

This case is brought by individual Trustees of the Local 98 Welfare Fund[2] against Local 24. Plaintiffs allege that on or about November 5, 1998, at approximately 9:30 a.m., in Columbus, Ohio, Doug Biggs, an agent and employee of Local 24 acting in the course of his employment, attempted to coerce then-Trustee Michael Keller in the exercise of his fiduciary responsibilities by offering a thing of value to Trustee Keller's employer. Allegedly, Mr. Biggs stated that if Trustee Keller's employer would persuade him to resign as a Trustee, Local 24 would withdraw a grievance that it had filed against the employer. Plaintiffs aver that this conduct violated section 404 of the Employee Retirement Income Security Act ("ERISA") by coercing Trustee Keller in the exercise of his fiduciary duties and violated the Trust Agreement to which Defendant is a party.

Plaintiffs further allege that on or about May 7, 1999, and for approximately sixty days prior, Defendant coerced a fiduciary, Walter Johanni, a then-Trustee of the Local 98 Welfare Fund, in the exercise of his fiduciary responsibilities by withholding $6,450 in Equality Fund monies, which had been approved for disbursement by Defendant.[3] Defendant allegedly withheld the money because of its displeasure with Johanni's actions as a Trustee. On May 7, 1999, Defendant allegedly threatened to continue to withhold approved Equality Fund payments from Trustee Johanni's company. Plaintiffs assert that the monies were payable to Columbus Heating and Ventilating Company, of which Mr. Johan-

---

1. The composition of the Board of Trustees of the Local 98 Pension Fund is identical to that of the Local 98 Health and Welfare Fund, as all Trustees are elected to both Boards concomitantly; the agreements governing the Funds are also identical in all material respects. All discussion that follows regarding the composition of the Board of the Welfare Fund, as well as all discussion regarding its governing Agreement, is equally applicable to the Pension Fund.

2. The position to be taken by the Fund *qua* Fund with regard to this suit is still uncertain at this time.

3. Plaintiffs state that the Equality Fund money is Defendant's money that is used for the purpose of subsidizing union contractors, and thus making them more competitive vis-a-vis non-union contractors. Plaintiffs further state that, since a contractor knows before making his bid whether Equality Fund money has been approved, a union contractor competing with other union contractors (who base their bids on the knowledge that, if they win the contract, they will receive Equality Fund money) cannot be competitive in the bid without himself also relying on the promised Equality Fund subsidization. Plaintiffs aver that not receiving Equality Fund money hurts a contractor who has bid based on assurances that the money was available and who has won the project for the bid price.

ni is the president, treasurer, and chief executive officer. Plaintiffs contend that, at the time, a total of $87,500 in Equality Funds had been committed to Trustee Johanni's company, though only $6,450 was already "late." Plaintiffs allege that Trustee Johanni was coerced by Defendant and compelled to resign as a Trustee because he could not discharge his fiduciary responsibilities under circumstances in which Defendant would withhold monies due and payable to his company because of his actions as a Trustee. Plaintiffs submit that Trustee Johanni resigned his position as a Trustee on May 8, 1997, as a result of the alleged coercion.[4]

Plaintiffs here seek: (1) a permanent injunction prohibiting Defendant engaging in any conduct, acts or practices having the effect of coercing any Trustee in the exercise of his or her fiduciary responsibilities; (2) a preliminary injunction; (3) such further equitable relief as may be just, proper and equitable; and (4) payment of their costs for this action.

Defendant challenges many of Plaintiffs' assertions of fact. Defendant also contends, however, that none of these issues of fact is material, and that, for the purposes of this Motion, even if all of Plaintiffs' assertions of fact are assumed to be true, Defendant is still entitled to judgment as a matter of law for two independent reasons: (1) since Defendant itself owed no fiduciary duties to the Funds, it is not subject to attack under ERISA section 404(a)(1) or 502(a)(3); and (2) Plaintiffs have not alleged any actual violation of fiduciary duty.

### III. Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). The non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 340 (6th Cir.1993) (citation omitted). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (finding summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment the evidence must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *see also Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

---

4. Plaintiffs note in their Memorandum Contra that Mr. Johanni received an Equality Fund check (which he had been expecting since March) dated on the day of his resignation, and that, following Mr. Johanni's resignation, the remainder of the Equality Fund money was paid in compliance with normal procedures.

## B. Parties' Contentions Regarding Sections 502(a)(3) and 404(a)(1)

Plaintiffs seek injunctive relief pursuant to section 502 of ERISA, 29 U.S.C. § 1001, which states, in relevant part:

(a) Persons empowered to bring a civil action. A civil action may be brought—

.        .        .        .        .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. . . .

29 U.S.C. § 1132(a)(3). Plaintiffs seek section 502(a)(3) relief based on alleged violations of section 404(a)(1), which provides:

(a) Prudent man standard of care.

(1) Subject to sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

29 U.S.C. § 1104.

Defendant contends that the plain language of section 404(a)(1) imposes an affirmative duty upon *fiduciaries to* discharge their obligations solely in the interest of the participants and beneficiaries. Plaintiffs do not allege that Defendant is a plan fiduciary, Defendant correctly notes, but rather characterize Defendant as a party in interest to the Funds. Defendant asserts that it is a non-fiduciary and therefore is not bound by the obligations and duties section 404(a)(1) imposes upon fiduciaries. Relying on *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), Defendant argues that the Supreme Court has affirmed Defendant's position that ERISA does not require any non-fiduciary to avoid either knowing or unknowing participation in a fiduciary's breach of his fiduciary duties. Moreover, Defendant argues, Plaintiffs do not allege that there was an actual breach of fiduciary duty. Defendant contends that Plaintiffs allege only that Local 24 coerced two Trustees in the exercise of their fiduciary duties, *not* that Local 24 actually participated in a breach or assisted such fiduciaries in a breach of their duties. Since there is no allegation of an actual breach, Defendant's reasoning goes, there is no cause of action.

Plaintiffs respond that the facts establish that Local 24, acting through its agents, violated ERISA by intentional acts and practices designed to exert control over the Trustees in the exercise of their fiduciary responsibilities. Plaintiffs allege that Defendant coerced one Trustee "into a position of dual loyalty" and coerced another Trustee to resign. Plaintiffs argue that these acts of coercion are violations of ERISA for which they may seek injunctive relief pursuant to section 502(a)(3), and that Defendant is therefore not entitled to judgment as a matter of law.

## C. Relationship Between Sections 502(a)(3) and 404(a)(1)

Defendant's *Mertens*-based argument is eviscerated by the Supreme Court's decision in *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.,* — U.S. —, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000). In *Harris,* the Court considered the question of whether section 502(a)(3)'s authorization of civil actions for equitable relief to redress ERISA violations extends to a suit against a non-fiduciary "party in interest" to a transaction barred by section 406(a)(1). *See Harris,* — U.S. at —, 120 S.Ct. at 2184. The Court held that it does. *See id.* The Court noted that, rather than serving a truly separate function from section 404(a), section 406(a)(1) is a provision "which supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, [pursuant to] § 404(a), by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Id.* at 2185 (quoting *Commissioner v. Keystone Consol. Indus.,* 508 U.S. 152, 160, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993)). In *Harris,* there was an allegation that an ERISA pension plan and a party in interest, Respondent Salomon Smith Barney, entered into a transaction prohibited by section 406(a) and not otherwise exempted by ERISA. *Id.* at 2185. Respondent argued that "section 502(a)(3), when used to remedy a transaction prohibited by section 406(a), authorizes a suit only against the party expressly constrained by § 406(a)—the fiduciary who caused the plan to enter the transaction...." *Id.* at 2185–86. The Court agreed that section 406(a) imposes a duty only on the fiduciary, but rejected the argument that a non-fiduciary may not be held liable under section 502(a)(3). *See id.* at 2186. The Court held that " § 502(a)(3) itself imposes certain duties, and therefore

that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Id.* at 2186–87.[5] The Court further held that " § 502(a)(3) admits of no limit (aside from the 'appropriate equitable relief' caveat ... ) on the universe of possible defendants." *Id.* at 2187. Thus, non-fiduciary liability could derive from section 502(a)(3), even where such non-fiduciaries would not face liability under a specific substantive provision of ERISA. *See id.* at 2188.

Defendant here attempts to distinguish *Harris* by noting that the substantive provision relied upon in *Harris* was section 406(a)(1), while Plaintiffs here allege violations of section 404(a)(1). This, however, is a distinction without a difference. The action here is one for equitable relief under section 502(a)(3), as was the action in *Harris.* Given that section 406(a)(1) was enacted to supplement and to clarify section 404(a)(1), *see Harris,* — U.S. at — – —, 120 S.Ct. at 2184–85, this Court finds that a violation of section 404(a)(1) would support a claim under section 502(a)(3) as readily as would a violation of section 406(a)(1), particularly in light of the Supreme Court's determination that the violation need not be itself actionable in order to serve as evidence in an action brought pursuant to section 502(a)(3). *See id.* at 2187 n. 2. Since "defendant status under § 502(a)(3) may arise from duties imposed by § 502(a)(3) itself, and hence does *not* turn on whether the defendant is expressly subject to a duty under one of ERISA's substantive provisions," *Id.* at 2188 (emphasis added), the remaining relevant question before this Court is whether Plaintiffs have a cause of action under section 502(a)(3).

**5.** The Court went on to note that, in the context of a section 502(a)(3) claim, section 406(a) may serve as a sword for plaintiffs, *not* as a shield for defendants: a valid section 406(a) claim is not a condition precedent to bringing suit under section 502(a)(3), rather

"the § 406 transaction is merely an argument in support of [Petitioner's] § 502(a)(3) claim for equitable relief...." *Harris,* — U.S. at — n. 2, 120 S.Ct. at 2187 n. 2 (punctuation omitted).

## D. Possibility that Section 502(a)(3) Was Violated

Defendant argues that, even if section 502(a)(3) could support an action where section 404(a)(1) could not, Plaintiffs have failed to make allegations sufficient to satisfy section 502(a)(3)'s requirements. The thrust of Defendant's argument is that, while Plaintiffs have certainly alleged coercion, they have not claimed that there was ever any actual *breach* of fiduciary duty. Defendant claims, therefore, that even if the alleged coercion could be proven, Plaintiffs would not have a cause of action. This argument, while stronger than Defendant's first, is erroneous.

Section 502(a)(3) allows a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title *or* the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title *or* the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphases added). Thus, an action may be brought for violation of the terms of ERISA *or* the terms of the plan at issue.

Plaintiffs allege conduct that, in the light most favorable to them, could be viewed as violative of both section 404(a)(1) and the terms of the Trust Agreements that govern the Welfare Fund and the Pension Fund. By the terms of section 502(a)(3), a colorable claim that *either* ERISA *or* the plan had been violated would be enough for Plaintiffs to survive Defendant's Motion for Summary Judgment.

Plaintiffs assert that Defendant's coercive activities forced Messrs. Johanni and Keller into positions of "dual loyalty," in violation of section 404(a)(1)'s command that "a fiduciary shall discharge his duties with respect to a plan *solely in the interest of the participants and beneficiaries ...."* 29 U.S.C. § 1104 (emphasis added). Defendant counters that since Mr. Johanni resigned in response to the alleged coercion and Mr. Keller never buckled, Plaintiffs' allegations do not support the inference that either man was ever serving more than one master.

This Court believes that an inference of dual loyalty could indeed be drawn by the evidence offered by Plaintiffs. Mr. Johanni stated in his November 30, 1999 deposition that he resigned from the Funds the day after Mr. Frazier informed him that Mr. Johanni's actions as a Trustee were placing Mr. Johanni's business in financial peril. It is a completely reasonable inference that the "box" Mr. Johanni felt he could only escape by resigning was one of dual loyalty, and that, for the day in between being threatened and tendering his resignation, Mr. Johanni felt the weight of commands of both the Funds and Local 24.

Likewise, Plaintiffs have offered evidence that Mr. Keller was aware that an agent of Local 24 had informed Mr. Keller's boss, Ron Belford, that a grievance filed by the union would go away if Mr. Belford could convince Mr. Keller to resign his Trustee position. That such knowledge could make Mr. Keller, as a Trustee, feel he should balance his employer's interests against those of the participants and beneficiaries of the Fund is an inference which could reasonably be drawn by a finder of fact.

Furthermore, Plaintiffs have a strong argument that Defendant's alleged actions were an attempt to alter the composition of the group of Trustees in a manner prohibited by the Health and Welfare Fund Trust Agreement. Section 4.7 of the Trust Agreement governs the removal of Trustees: "Any Trustee may be removed from office at any time in accordance with the same procedure pursuant to which he was appointed under section 4.3 of this Agreement...." Appointment to Trustee positions is by election. Plaintiffs have made allegations that, if found to be true, would support a claim that Defendant sought to circumvent the procedure for voting a Trustee out of office by applying pressure to resign on Trustees with which it was unhappy. This alleged violation of

the Trust Agreement serves as an independent basis for a claim under section 502(a)(3).

## IV. Conclusion

As the Supreme Court has recently made clear that liability under ERISA section 502(a)(3) "does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued," *Harris*, —— U.S. at ——––——, 120 S.Ct. at 2186–87, Defendant's argument that it is entitled to summary judgment because it is not subject to liability under section 404(a)(1) fails. Because Plaintiffs have offered evidence that, viewed in the light most favorable to them, could support a finding that Defendant violated ERISA section 404(a)(1) and/or the terms of the Health and Welfare Plan and Trust Agreement, Defendant's Motion for Summary Judgment fails.

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.