# HARRIS TRUST AND SAVINGS BANK, AS TRUSTEE FOR THE AMERITECH PENSION TRUST, ET AL. *v.* SALOMON SMITH BARNEY INC. ET AL.

No. 99–579.   Argued April 17, 2000—Decided June 12, 2000

240

THOMAS, J., delivered the opinion for a unanimous Court.

*Robert A. Long, Jr.,* argued the cause for petitioners. With him on the briefs were *John M. Vine, Michael R. Bergmann,* and *Charles C. Jackson.*

*Beth S. Brinkmann* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Solicitor General Waxman, Deputy Solicitor General Kneedler, Henry L. Solano, Allen H. Feldman, Nathaniel I. Spiller,* and *Elizabeth Hopkins.*

*Peter C. Hein* argued the cause for respondents. With him on the brief were *Andrew C. Houston, William F. Conlon,* and *Richard B. Kapnick.**

JUSTICE THOMAS delivered the opinion of the Court.

Section 406(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 879, bars a fiduciary of an employee benefit plan from causing the plan to engage in certain transactions with a "party in interest." 29 U. S. C. § 1106(a). Section 502(a)(3) authorizes a "participant, beneficiary, or fiduciary" of a plan to bring a civil action to obtain "appropriate equitable relief" to redress violations of ERISA Title I. 29 U. S. C. § 1132(a)(3). The question is whether that authorization extends to a suit against a nonfiduciary "party in interest" to a transaction barred by § 406(a). We hold that it does.

I

Responding to deficiencies in prior law regulating transactions by plan fiduciaries, Congress enacted ERISA § 406(a)(1), which supplements the fiduciary's general duty of

---

*Mary Ellen Signorille, Melvin Radowitz, Paula Brantner,* and *Jeffrey Lewis* filed a brief for the AARP et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Council of Life Insurers et al. by *William J. Kilberg, Paul Blankenstein, Miguel A. Estrada,* and *Victoria E. Fimea;* and for the Bond Market Association et al. by *Michael R. Lazerwitz, Paul Saltzman,* and *Stuart J. Kaswell.*

loyalty to the plan's beneficiaries, § 404(a), by categorically barring certain transactions deemed "likely to injure the pension plan," *Commissioner* v. *Keystone Consol. Industries, Inc.*, 508 U. S. 152, 160 (1993). Section 406(a)(1) provides, among other things, that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . sale or exchange . . . of any property between the plan and a party in interest." 29 U. S. C. § 1106(a)(1)(A). Congress defined "party in interest" to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries. See § 3(14), 29 U. S. C. § 1002(14). Section 406's prohibitions are subject to both statutory and regulatory exemptions. See §§ 408(a), (b), 29 U. S. C. §§ 1108(a), (b).

This case comes to us on the assumption that an ERISA pension plan (the Ameritech Pension Trust (APT)) and a party in interest (respondent Salomon Smith Barney (Salomon)) entered into a transaction prohibited by § 406(a) and not exempted by § 408.[1] APT provides pension benefits to employees and retirees of Ameritech Corporation and its subsidiaries and affiliates. Salomon, during the late 1980's, provided broker-dealer services to APT, executing nondiscretionary equity trades at the direction of APT's fiduciaries, thus qualifying itself (we assume) as a "party in interest." See § 3(14)(B), 29 U. S. C. § 1002(14)(B) (defining "party in interest" as "a person providing services to [an employee benefit] plan"). During the same period, Salomon sold interests in several motel properties to APT for nearly $21 million. APT's purchase of the motel interests was directed by National Investment Services of America (NISA), an investment manager to which Ameritech had delegated investment

---

[1] Salomon has preserved for remand arguments that there is no § 406(a) prohibition because it is not a "party in interest" and that, in any event, the transaction is exempted by Prohibited Transaction Exemption 75-1, 40 Fed. Reg. 50847 (1975).

discretion over a portion of the plan's assets, and hence a fiduciary of APT, see § 3(21)(A)(i), 29 U. S. C. § 1002(21)(A)(i).

This litigation arose when APT's fiduciaries—its trustee, petitioner Harris Trust and Savings Bank, and its administrator, petitioner Ameritech Corporation—discovered that the motel interests were nearly worthless. Petitioners maintain that the interests had been worthless all along; Salomon asserts, to the contrary, that the interests declined in value due to a downturn in the motel industry. Whatever the true cause, petitioners sued Salomon in 1992 under § 502(a)(3), which authorizes a "participant, beneficiary, or fiduciary" to bring a civil action "to enjoin any act or practice which violates any provision of [ERISA Title I] . . . or . . . to obtain other appropriate equitable relief . . . to redress such violations." 29 U. S. C. § 1132(a)(3).

Petitioners claimed, among other things, that NISA, as plan fiduciary, had caused the plan to engage in a *per se* prohibited transaction under § 406(a) in purchasing the motel interests from Salomon, and that Salomon was liable on account of its participation in the transaction as a nonfiduciary party in interest. Specifically, petitioners pointed to § 406(a)(1)(A), 29 U. S. C. § 1106(a)(1)(A), which prohibits a "sale or exchange . . . of any property between the plan and a party in interest," and § 406(a)(1)(D), 29 U. S. C. § 1106(a)(1)(D), which prohibits a "transfer to . . . a party in interest . . . of any assets of the plan." Petitioners sought rescission of the transaction, restitution from Salomon of the purchase price with interest, and disgorgement of Salomon's profits made from use of the plan assets transferred to it. App. 41.

Salomon moved for summary judgment, arguing that § 502(a)(3), when used to remedy a transaction prohibited by § 406(a), authorizes a suit only against the party expressly constrained by § 406(a)—the fiduciary who caused the plan to enter the transaction—and not against the counterparty to the transaction. See § 406(a)(1), 29 U. S. C. § 1106(a)(1) ("A

*fiduciary* with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction . . ." (emphasis added)). The District Court denied the motion, holding that ERISA does provide a private cause of action against nonfiduciaries who participate in a prohibited transaction, but granted Salomon's subsequent motion for certification of the issue for interlocutory appeal under 28 U. S. C. § 1292(b).

The Court of Appeals for the Seventh Circuit reversed. 184 F. 3d 646 (1999). It began with the observation that § 406(a), by its terms and like several of its neighboring provisions, *e. g.*, § 404, governs only the conduct of fiduciaries, not of counterparties or other nonfiduciaries. See *id.*, at 650. The court next posited that "where ERISA does not expressly impose a duty, there can be no cause of action," *ibid.*, relying upon dictum in our decision in *Mertens* v. *Hewitt Associates*, 508 U. S. 248, 254 (1993), that § 502(a)(3) does not provide a private cause of action against a nonfiduciary for knowing participation in a fiduciary's breach of duty. The Seventh Circuit saw no distinction between the *Mertens* situation (involving § 404) and the instant case (involving § 406), explaining that neither section expressly imposes a duty on nonfiduciaries. Finally, in the Seventh Circuit's view, Congress' decision to authorize the Secretary of Labor to impose a civil penalty on a nonfiduciary "party in interest" to a § 406 transaction, see § 502(i), simply confirms that Congress deliberately selected one enforcement tool (a civil penalty imposed by the Secretary) instead of another (a civil action under § 502(a)(3)). Accordingly, the Seventh Circuit held that a nonfiduciary cannot be liable under § 502(a)(3) for participating in a § 406 transaction and entered summary judgment in favor of Salomon.

In doing so, the Seventh Circuit departed from the uniform position of the Courts of Appeals that § 502(a)(3)—and the similarly worded § 502(a)(5), which authorizes civil actions by the Secretary—does authorize a civil action against a non-

fiduciary who participates in a transaction prohibited by § 406(a)(1). See *LeBlanc* v. *Cahill*, 153 F. 3d 134, 152–153 (CA4 1998) (§ 502(a)(3)); *Landwehr* v. *DuPree*, 72 F. 3d 726, 734 (CA9 1995) (same); *Herman* v. *South Carolina National Bank*, 140 F. 3d 1413, 1421–1422 (CA11 1998) (§ 502(a)(5)), cert. denied, 525 U. S. 1140 (1999); *Reich* v. *Stangl*, 73 F. 3d 1027, 1032 (CA10) (same), cert. denied, 519 U. S. 807 (1996); *Reich* v. *Compton*, 57 F. 3d 270, 287 (CA3 1995) (same). We granted certiorari, 528 U. S. 1068 (2000), and now reverse.

## II

We agree with the Seventh Circuit's and Salomon's interpretation of § 406(a). They rightly note that § 406(a) imposes a duty only on the fiduciary that causes the plan to engage in the transaction. See § 406(a)(1), 29 U. S. C. § 1106(a)(1) ("A *fiduciary* with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction . . ." (emphasis added)). We reject, however, the Seventh Circuit's and Salomon's conclusion that, absent a substantive provision of ERISA expressly imposing a duty upon a nonfiduciary party in interest, the nonfiduciary party may not be held liable under § 502(a)(3), one of ERISA's remedial provisions. Petitioners contend, and we agree, that § 502(a)(3) itself imposes certain duties, and therefore that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued.[2]

---

[2] Salomon asserts that petitioners waived this theory by neglecting to present it to the courts below. According to Salomon, petitioners' claim (until their merits brief in this Court) has been that Salomon may be sued under § 502(a)(3) only because Salomon "violated" § 406(a). But, even assuming that petitioners did not pellucidly articulate this theory before the Seventh Circuit, it appears to us that the Seventh Circuit understood the tenor of the argument—namely, that the § 406(a) transaction is the "act or practice" which violates § 406(a) and therefore may be redressed by a civil action brought under § 502(a)(3) against parties to the § 406(a) transaction, even if the defendant did not itself "violate" § 406(a). See 184 F. 3d 646,

Section 502 provides:

"(a) . . .

"A civil action may be brought—

. . . . .

"(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of [ERISA Title I] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U. S. C. § 1132(a)(3).

This language, to be sure, "does not . . . authorize 'appropriate equitable relief' *at large,* but only 'appropriate equitable relief' for the purpose of 'redress[ing any] violations or . . . enforc[ing] any provisions' of ERISA or an ERISA plan." *Peacock* v. *Thomas,* 516 U. S. 349, 353 (1996) (quoting *Mertens, supra,* at 253 (emphasis and alterations in original)). But § 502(a)(3) admits of no limit (aside from the "appropriate equitable relief" caveat, which we address *infra*) on the universe of possible defendants. Indeed, § 502(a)(3) makes no mention at all of which parties may be proper defendants—the focus, instead, is on redressing the *"act or practice* which violates any provision of [ERISA Title I]." 29 U. S. C. § 1132(a)(3) (emphasis added). Other provisions of ERISA, by contrast, do expressly address who may be a defendant. See, *e. g.,* § 409(a), 29 U. S. C. § 1109(a) (stating that "[a]*ny person who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be per-

---

650 (CA7 1999). Moreover, petitioners' current focus on the "act or practice"—*i. e.,* the § 406 *transaction*—is merely an argument in support of their § 502(a)(3) claim for equitable relief against Salomon, not an independent claim. "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee* v. *Escondido,* 503 U. S. 519, 534 (1992).

sonally liable" (emphasis added)); § 502(*l*), 29 U. S. C. § 1132(*l*) (authorizing imposition of civil penalties only against a "fiduciary" who violates part 4 of Title I or "any other person" who knowingly participates in such a violation). And § 502(a) itself demonstrates Congress' care in delineating the universe of *plaintiffs* who may bring certain civil actions. See, *e. g.,* § 502(a)(3), 29 U. S. C. § 1132(a)(3) ("A civil action may be brought . . . *by a participant, beneficiary, or fiduciary* . . ." (emphasis added)); § 502(a)(5), 29 U. S. C. § 1132(a)(5) ("A civil action may be brought . . . *by the Secretary* . . ." (emphasis added)).

In light of Congress' precision in these respects, we would ordinarily assume that Congress' failure to specify proper defendants in § 502(a)(3) was intentional. See *Russello* v. *United States,* 464 U. S. 16, 23 (1983). But ERISA's "'comprehensive and reticulated'" scheme warrants a cautious approach to inferring remedies not expressly authorized by the text, *Massachusetts Mut. Life Ins. Co.* v. *Russell,* 473 U. S. 134, 146 (1985) (quoting *Nachman Corp.* v. *Pension Benefit Guaranty Corporation,* 446 U. S. 359, 361 (1980)), especially given the alternative and intuitively appealing interpretation, urged by Salomon, that § 502(a)(3) authorizes suits only against defendants upon whom a duty is imposed by ERISA's substantive provisions. In this case, however, § 502(*l*) resolves the matter—it compels the conclusion that defendant status under § 502(a)(3) may arise from duties imposed by § 502(a)(3) itself, and hence does not turn on whether the defendant is expressly subject to a duty under one of ERISA's substantive provisions.

Section 502(*l*) provides in relevant part:

"(1) In the case of—

"(A) any breach of fiduciary responsibility under (or other violation of) part 4 of this subtitle by a fiduciary, or

"(B) any knowing participation in such a breach or violation by any other person,

"the Secretary shall assess a civil penalty against such fiduciary or other person in an amount equal to 20 percent of the applicable recovery amount.

"(2) For purposes of paragraph (1), the term 'applicable recovery amount' means any amount which is recovered from a fiduciary or other person with respect to a breach or violation described in paragraph (1)—

"(A) pursuant to any settlement agreement with the Secretary, or

"(B) ordered by a court to be paid by such fiduciary or other person to a plan or its participants and beneficiaries in a judicial proceeding instituted by the Secretary under subsection (a)(2) or (a)(5) of this section." 29 U. S. C. §§ 1132(*l*)(1)–(2).

Section 502(*l*) contemplates civil penalty actions by the Secretary against two classes of defendants, fiduciaries and "other person[s]." The latter class concerns us here. Paraphrasing, the Secretary shall assess a civil penalty against an "other person" who "knowing[ly] participat[es] in" "any . . . violation of . . . part 4 . . . by a fiduciary." And the amount of such penalty is defined by reference to the amount "ordered by a court to be paid by such . . . other person to a plan or its participants and beneficiaries in a judicial proceeding instituted by the Secretary under subsection (a)(2) or *(a)(5)." Ibid.* (emphasis added).

The plain implication is that the Secretary may bring a civil action under § 502(a)(5) against an "other person" who "knowing[ly] participat[es]" in a fiduciary's violation; otherwise, there could be no "applicable recovery amount" from which to determine the amount of the civil penalty to be imposed on the "other person." This § 502(a)(5) action is available notwithstanding the absence of any ERISA provision explicitly imposing a duty upon an "other person" not to engage in such "knowing participation." And if the Secretary may bring suit against an "other person" under subsection (a)(5), it follows that a participant, beneficiary, or fi-

duciary may bring suit against an "other person" under the similarly worded subsection (a)(3). See *Mertens,* 508 U. S., at 260. Section 502(*l*), therefore, refutes the notion that § 502(a)(3) (or (a)(5)) liability hinges on whether the particular defendant labors under a duty expressly imposed by the substantive provisions of ERISA Title I.

Salomon invokes *Mertens* as articulating an alternative, more restrictive reading of § 502(*l*) that does not support the inference we have drawn. In *Mertens,* we suggested, in dictum, that the "other person[s]" in § 502(*l*) might be limited to the "cofiduciaries" made expressly liable under § 405(a) for knowingly participating in another fiduciary's breach of fiduciary responsibility. *Id.,* at 261. So read, § 502(*l*) would be consistent with the view that liability under § 502(a)(3) depends entirely on whether the particular defendant violated a duty expressly imposed by the substantive provisions of ERISA Title I. But the *Mertens* dictum did not discuss—understandably, since we were merely flagging the issue, see 508 U. S., at 255, 260–261—that ERISA defines the term "person" without regard to status as a cofiduciary (or, for that matter, as a fiduciary or party in interest), see § 3(9), 29 U. S. C. § 1002(9). Moreover, § 405(a) indicates that a cofiduciary is *itself* a fiduciary, see § 405(a), 29 U. S. C. § 1105(a) ("[A] fiduciary . . . shall be liable for a breach of fiduciary responsibility of another fiduciary . . ."), and § 502(*l*) clearly distinguishes between a "fiduciary," § 502(*l*)(1)(A), 29 U. S. C. § 1132(*l*)(1)(A), and an "other person," § 502(*l*)(1)(B), 29 U. S. C. § 1132(*l*)(1)(B).

### III

Notwithstanding the text of § 502(a)(3) (as informed by § 502(*l*)), Salomon protests that it would contravene common sense for Congress to have imposed civil liability on a party, such as a nonfiduciary party in interest to a § 406(a) transaction, that is not a "wrongdoer" in the sense of violating a duty expressly imposed by the substantive provisions of ERISA Title I. Salomon raises the specter of § 502(a)(3)

suits being brought against innocent parties—even those having no connection to the allegedly unlawful "act or practice"—rather than against the true wrongdoer, *i. e.,* the fiduciary that caused the plan to engage in the transaction.

But this *reductio ad absurdum* ignores the limiting principle explicit in § 502(a)(3): that the retrospective relief sought be "appropriate equitable relief." The common law of trusts, which offers a "starting point for analysis [of ERISA] . . . [unless] it is inconsistent with the language of the statute, its structure, or its purposes," *Hughes Aircraft Co.* v. *Jacobson,* 525 U. S. 432, 447 (1999) (internal quotation marks omitted), plainly countenances the sort of relief sought by petitioners against Salomon here. As petitioners and *amicus curiae* the United States observe, it has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom. See, *e. g.,* Restatement (Second) of Trusts §§ 284, 291, 294, 295, 297 (1957); 4 A. Scott & W. Fratcher, Law of Trusts § 284, § 291.1, pp. 77–78, § 294.2, p. 101, § 297 (4th ed. 1989) (hereinafter Law of Trusts); 5 *id.,* § 470, at 363; 1 D. Dobbs, Law of Remedies § 4.7(1), pp. 660–661 (2d ed. 1993); G. Bogert, Law of Trusts and Trustees § 866, pp. 95–96 (rev. 2d ed. 1995). As we long ago explained in the analogous situation of property obtained by fraud:

> "Whenever the legal title to property is obtained through means or under circumstances 'which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of

the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right and takes the property relieved from the trust.'" *Moore* v. *Crawford,* 130 U. S. 122, 128 (1889) (quoting 2 J. Pomeroy, Equity Jurisprudence § 1053, pp. 628–629 (1886)).

Importantly, that a transferee was not "the original wrongdoer" does not insulate him from liability for restitution. See also, *e. g.,* Restatement of Restitution ch. 7, Introductory Note, p. 522 (1937); 1 Dobbs, *supra,* § 4.3(2), at 597 ("The constructive trust is based on property, not wrongs"). It also bears emphasis that the common law of trusts sets limits on restitution actions against defendants other than the principal "wrongdoer." Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust. Translated to the instant context, the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful. Those circumstances, in turn, involve a showing that the *plan fiduciary,* with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction. *Lockheed Corp.* v. *Spink,* 517 U. S. 882, 888–889 (1996).[3]

---

[3] The issue of which party, as between the party seeking recovery and the defendant-transferee, bears the burden of proof on whether the transferee is a purchaser for value and without notice, is not currently before us, but may require resolution on remand. Cf. 4 Law of Trusts § 284, at 40 (noting conflict of authority in non-ERISA cases on which party bears the burden of proof).

The common law additionally leads us to reject Salomon's complaint that our view of § 502(a)(3) would incongruously allow not only the harmed beneficiaries, but also the culpable fiduciary, to seek restitution from the arguably less culpable counterparty-transferee. The common law sees no incongruity in such a rule, see Restatement (Second) of Trusts, *supra*, § 294, at 69 ("[A]n action can be maintained against the transferee either by the beneficiary or the trustee"); 4 Law of Trusts § 294.2, at 101, and for good reason: "Although the trustee bases his cause of action upon his own voluntary act, and even though the act was knowingly done in breach of his duty to the beneficiary, he is permitted to maintain the action, since the purpose of the action is to recover money or other property for the trust estate, and whatever he recovers he will hold subject to the trust." Restatement (Second) of Trusts, *supra*, § 294, Comment *c*.

But Salomon advances a more fundamental critique of the common-law analogy, reasoning that the antecedent violation here—a violation of § 406(a)'s *per se* prohibitions on transacting with a party in interest—was unknown at common law, and that common-law *liability* should not attach to an act that does not violate a common-law *duty*. While Salomon accurately characterizes § 406(a) as expanding upon the common law's arm's-length standard of conduct, see *Keystone Consol. Industries*, 508 U. S., at 160, we reject Salomon's unsupported suggestion that remedial principles of the common law are tethered to the precise contours of common-law duty.

We note, however, that our interpretation of § 502(a)(3) to incorporate common-law remedial principles does not necessarily foreclose accommodation of Salomon's underlying concern that ERISA should not be construed to require counterparties to transactions with a plan to monitor the plan for compliance with each of ERISA's intricate details. See, *e. g.*, Prohibited Transaction Exemption 75–1, § II(e), 40 Fed. Reg. 50847 (1975) (requiring that the plan maintain certain

records for a 6-year period). While we have no occasion to decide the matter here, it may be that such concerns should inform courts' determinations of what a transferee should (or should not) be expected to know when engaging in a transaction with a fiduciary. See Restatement (Second) of Trusts § 297(a), at 74 (defining "notice" to mean what a transferee "knows or *should* know" (emphasis added)). Cf. Prohibited Transaction Exemption 75–1, § II(e)(1), 40 Fed. Reg. 50847 (1975) (providing that a broker-dealer shall not be subject to civil penalties under § 502(i) as a § 406(a) "party in interest" or taxes under 26 U. S. C. § 4975 as a similarly defined "disqualified person" if such records are not maintained by the plan).

For these reasons, an action for restitution against a transferee of tainted plan assets satisfies the "appropriate[ness]" criterion in § 502(a)(3). Such relief is also "equitable" in nature. See *Mertens,* 508 U. S., at 260 ("[T]he 'equitable relief' awardable under § 502(a)(5) includes restitution of ill-gotten plan assets or profits . . ."); *ibid.* (explaining that, in light of the similarity of language in §§ 502(a)(3) and (5), that language should be deemed to have the same meaning in both subsections).

## IV

We turn, finally, to two nontextual clues cited by Salomon and *amici.* First, Salomon urges us to consider, as the Seventh Circuit did, 184 F. 3d, at 652–653, the Conference Committee's rejection of language from the Senate bill that would have expressly imposed a duty on nonfiduciary parties to § 406(a) transactions. See Brief for Respondents 28–29 (quoting H. R. Rep. No. 93–2, p. 533 (1974) (with amendments as passed by the Senate), reprinted in 3 Legislative History of ERISA (Committee Print compiled for the Senate Subcommittee on Labor of the Committee on Labor and Public Welfare by the Library of Congress), Ser. No. 93–406, p. 3780 (1976) (staff comment on House and Senate differences on § 409)); 3 Legislative History of ERISA, *supra,* at 5259 (staff

comment on House and Senate differences on § 409). Second, Salomon and *amici* submit that the policy consequences of recognizing a § 502(a)(3) action in this case could be devastating—counterparties, faced with the prospect of liability for dealing with a plan, may charge higher rates or, worse, refuse altogether to transact with plans.

We decline these suggestions to depart from the text of § 502(a)(3). In ERISA cases, "[a]s in any case of statutory construction, our analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft,* 525 U. S., at 438 (citation and internal quotation marks omitted). Section 502(a)(3), as informed by § 502(*l*), satisfies this standard.

Accordingly, we reverse the Seventh Circuit's judgment and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*