L.I. HEAD START CHILD DEVELOP-
MENT SERVICES, INC., and Paul
Adams, derivatively on behalf of Com-
munity Action Agencies Insurance
Group, and as a class representative
of all other persons similarly situated,
Plaintiffs,

v.

Neil M. FRANK; Allen B. Breslow;
Frank & Breslow, LLP; and Frank &
Breslow, P.C., Defendants.

No. 00–CV–5231.

United States District Court,
E.D. New York.

Sept. 26, 2001.

Altieri, Kushner, Miuccio & Frind, P.C. by Alexander A. Miuccio, New York City, for Plaintiffs.

Frank & Breslow, P.C. by Allen B. Breslow, Farmingdale, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In what appears to be a matter of first impression, the Plaintiffs, judgment creditors of a health and welfare benefit fund, seek to hold the fund's trial attorneys in the underlying action liable as aiders and abettors of the fund's breach of fiduciary duty under ERISA on the ground that the attorneys were knowingly paid with funds which should have been held in trust for the Plaintiffs. Presently before the Court is the Defendants' motion to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

This action is an outgrowth of a case previously decided by this Court, *L.I. Head Start v. Kearse,* 86 F.Supp.2d 143 (E.D.N.Y.2000), and the factual background set forth in that decision is deemed incorporated here.

In sum, from 1986 until 1992, Plaintiff L.I. Head Start maintained a health and welfare benefit fund with Community Action Agencies Insurance Group ("CAAIG") to pay medical and health benefits to its employees. L.I. Head Start would make contributions to CAAIG on behalf of its employees, and CAAIG, in turn, would use those contributions to purchase third-party insurance coverage for L.I. Head Start's employees, or to fund its own self-insurance for those employees. However, CAAIG did not immediately spend the entirety of the contributions, and by 1992, had built up a substantial reserve of unspent funds attributable to L.I. Head Start's contributions. On September 1, 1992, L.I. Head Start wrote to CAAIG, indicating that it was electing to terminate its coverage with CAAIG and requesting the return of the unspent reserve funds. CAAIG refused to return the reserve funds, and, in 1993, the L.I. Head Start commenced an action before this Court under ERISA, seeking a return of these funds.

Following a bench trial, on March 3, 2000, this Court held that CAAIG was acting as a fiduciary for L.I. Head Start with respect to the money contributed to the fund, and that ERISA's "exclusive

benefit" rule required that CAAIG return the unspent funds to L.I. Head Start upon the termination of its participation in the fund. 86 F.Supp.2d at 151–52. Accordingly, on May 25, 2000, this Court entered a judgment in favor of L.I. Head Start against CAAIG for the sum of $802,831.57, including interest and attorney's fees. However, it appears that CAAIG is now insolvent, and the judgment remains unpaid.

On September 25, 2000, the Plaintiffs commenced this action, alleging that CAAIG's former attorneys, Defendant Frank & Breslow, P.C., violated 29 U.S.C. § 1104(a)(1)(A) (ERISA's fiduciary duty provision), by aiding and abetting CAAIG's breach of its fiduciary duties to the Plaintiffs. In particular, the Plaintiffs allege that the Defendants accepted payment by CAAIG for attorney's fees in the underlying ERISA action, knowing that such payments were drawing on the reserve funds claimed to be owned by L.I. Head Start. The Defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that ERISA does not recognize such a claim.

## DISCUSSION

The court may not dismiss a complaint under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.; Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). The court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

The Plaintiffs' complaint is premised on the theory that a non-fiduciarysuch as a plan's attorneycan be held liable under ERISA for knowingly participating in a fiduciary's breach of its duties under Section 404 of ERISA, 29 U.S.C. § 1104. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281 (2d Cir.1992) ("we hold that one who knowingly participates in an ERISA fiduciary's breach of duty is jointly and severally liable with the fiduciary for resulting damages under ERISA"). Although the Supreme Court called that proposition into serious question in dicta in *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253–54, 113 S.Ct. 2063, 2067, 124 L.Ed.2d 161 (1993), in a more recent decision, *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241, 120 S.Ct. 2180, 2184, 147 L.Ed.2d 187 (2000), the Court held that, at least for purposes of Section 406 of ERISA, 29 U.S.C. § 1106 (which prohibits "parties in interest" from engaging in certain prohibited transactions with a fiduciary), ERISA permits a non-fiduciary to be sued. Even prior to *Harris Trust*, District Courts in this Circuit continued to accept *Diduck*'s principle of non-fiduciary liability under Section 404 of ERISA, *see e.g. Liss v. Smith*, 991 F.Supp. 278, 305 (S.D.N.Y.1998) ("courts in this Circuit have continued to follow *Diduck* absent contrary authority from the Court of Appeals"). This leads to the view that the Supreme Court's retreat from a narrow reading of ERISA's enforcement mechanisms in *Harris Trust* suggests that *Diduck*'s non-fiduciary liability continues to exist under Section 404.

The Defendants argue that, even if a non-fiduciary can be held liable under Sec-

tion 404 for aiding or abetting a fiduciary's breach of duty, they are subject to a statutory exception to such liability. Section 408 of ERISA, 29 U.S.C. § 1108, provides that "The prohibitions provided in section 1106 [prohibited transactions] of this title shall not apply to . . . the contracting or making reasonable arrangements with a party in interest for . . . legal, accounting, or other services necessary for the establishment or operation of the plan." 29 U.S.C. § 1108(b)(2). The Defendants claim that, having provided reasonable legal services to CAAIG, they are exempt from ERISA claims by virtue of Section 408.

■■■■ However, the Plaintiffs accurately note that Section 408 expressly provides a defense only to claims under Section 406–that is, the statutory list of certain "prohibited transactions." 29 U.S.C. § 1108. By contrast, the Plaintiffs assert that the Defendants here are liable under Section 404–that is, for participating in the fund's general breach of its fiduciary duty. *See* 29 U.S.C. § 1104(a)(1)(A). By its very terms, Section 408's defense does not extend to breach of fiduciary duty cases under Section 404. Nor does this Court see a basis for ignoring the language limiting Section 408's defenses to claims of improper prohibited transaction claims. Section 406 exists to supplement the broader provisions of Section 404(a)(1) by detailing specifically prohibited transactions "which offer a high potential for insider abuse of plans or for loss of plan assets." *Donovan v. Walton*, 609 F.Supp. 1221, 1229, 1246 (S.D.Fla.1985). Because the definition of prohibited transactions might impede a plan from entering into reasonable contracts for necessary services like legal or accounting advice or office space, Section 408 creates a "safe harbor" to the specific prohibited transaction rules of Section 406. It allows plans to avoid violating Section 406 for engaging in basic business transactions, while nevertheless holding the plan to its broad fiduciary obligations under Section 404. As a result, when a trustee seeks reimbursement from a fund for attorney's fees incurred in defending against a claim by plan participants, the court will examine whether the expenditure of funds was consistent with the trustee's fiduciary obligation to spend plan funds for the exclusive benefit of the participants under Section 404, not simply whether the expenditure was a reasonable purchase of legal services by the plan under Section 408. *See Martin v. Walton*, 773 F.Supp. 1524, 1525–27 (S.D.Fla.1991).

Accordingly, because the defense in Section 408 only applies to claims of liability for engaging in a prohibited transaction under Section 406, the Defendants here cannot rely on it as a defense to the Plaintiffs' claim that they participated in a breach of fiduciary duty under Section 404. *See LaScala v. Scrufari*, 96 F.Supp.2d 233, 238 (W.D.N.Y.2000) ("the plain language of section 408(c)(2) shows that a fiduciary who violates section 404(a) cannot seek the safe harbor of section 408(c)(2)'s reasonable compensation exemption").

■■■■ Although the Court's research has not revealed any prior case in which a plaintiff holding a judgment against an insolvent ERISA fund has maintained an action against the fund's former counsel for restitution of previously paid legal fees paid or the imposition of a constructive trust with regard to the legal fees paid by the fund to its counsel, such an action does appear to be cognizable under ERISA. The Court agrees with the Defendants that, in the abstract, such a claim appears to effectively turn an attorney representing an ERISA fund into a guarantor of a potential judgment against that fund. However, upon further reflection, this cause of action is both wholly appropriate and consistent with ERISA's goals. Be-

cause the attorney's knowledge and participation in the fiduciary's breach of its fiduciary duty is an essential element of the claim, as discussed more fully below, counsel who simply provide representation and legal counsel to an ERISA fund will not be held liable. On the other hand, speaking hypothetically, if one assumes that an unscrupulous counsel actively participates in conduct he knows to be in violation of his client's fiduciary duties, it would be fitting and proper to require the attorney to restore the proceeds of such unlawful conduct to the fund for disbursement to participants. *See Harris Trust,* 530 U.S. at 251, 120 S.Ct. at 2190 ("Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee ... knew or should have known of ... circumstances that rendered the transfer in breach of the trust").

The decision in *Diduck* sets forth the elements the Plaintiffs must allege to state ·such a claim: (1) that the fiduciary (CAAIG) breached its duty to act for the exclusive benefit of plan participants; (2) that the Defendant attorneys knowingly participated in that breach and (3) resulting damages. *Diduck,* 974 F.2d at 281–82; *Liss,* 991 F.Supp. at 305. The Plaintiffs have adequately alleged these elements in the complaint. The Plaintiffs specifically allege that "the payment of defendants' legal fees and disbursements from the Class Reserve was a breach of fiduciary duty" by CAAIG. Because the Defendants have not specifically challenged the legal merit of such an assertion, the Court, for purposes of this motion only, assumes that the payment of a fund's legal defense fees from its corpus constitutes a breach of fiduciary duty. *See e.g. Martin,* 773 F.Supp. at 1525–26.

Moreover, the Court finds that the Plaintiffs have adequately alleged the second element, the Defendants knowledge of such a breach, in paragraph 38 of the complaint, stating that "at the time the foregoing payments were made to defendants, they knew or should have known ... that said payments were being made from the [reserve funds belonging to the Plaintiffs]." Although the Plaintiffs do not set forth in the complaint that the fund is insolvent, the Court must draw all reasonable inferences in their favor, and thus, it assumes that the Plaintiffs' allegation that "the judgment remains unpaid" is a result of the fund being insolvent, partially due to the payment of attorney's fees to the Defendants. Accordingly, the Court finds that the Plaintiffs have adequately stated a cause of action under Section 404.

■ Proving such a claim is another matter, and the Plaintiffs may ultimately be unable to meet their burden. In order to prove the element of "knowing participation," the Plaintiffs.must establish the Defendants' knowledge that CAAIG's conduct contravened a fiduciary duty at the time it occurred. *Liss,* 991 F.Supp. at 305. Notably, the "conduct" breaching fiduciary duties in this case is not CAAIG refusing to return the reserve monies—the complaint does not allege that the Defendants actively participated in that act—but rather it is CAAIG's use of money from the Plaintiffs' reserve pool to pay the Defendants' fees.

In other words, the Plaintiffs will have to show not only that when CAAIG was paying the Defendants' invoices, it was tapping the Plaintiffs' reserve account (rather than a general operating or legal defense account), but also that the Defendants were or should have been aware of the particular internal bookkeeping account CAAIG was drawing on to pay them, and that such payment constituted a breach of CAAIG's fiduciary duty. While it is highly unlikely that an outside legal counsel would have such intimate knowledge of a client's accounting practices, this

Court must afford the Plaintiffs the opportunity to attempt to make such a showing. Proving the Defendants' knowledge on this point will be even more difficult in that many, if not most of the communications between the Defendants and CAAIG may be shielded by attorney-client privilege.

The complaint suggests that the Plaintiffs may attempt to prove that the Defendants' *should have* known that L.I. Head Start's reserve fund was being invaded because, at some point during the underlying litigation, the reserve funds from the other participating employers in CAAIG were known to be exhausted, presumably leaving the Plaintiffs' reserve pool as the only source of CAAIG's operating funds. Assuming-without deciding—that such constructive knowledge would be sufficient to establish the Defendants' knowledge of the source of the funds, the Plaintiffs face an additional hurdle: the statute of limitations. ERISA requires actions for breach of fiduciary duty to be commenced within six years of the breach, or within three years of the plaintiff's discovery of the breach, whichever is earlier. 29 U.S.C. § 1113; *Diduck v. Kaszycki & Sons Contractors, Inc.,* 874 F.2d 912, 919 (2d Cir. 1989). If the Defendants were allegedly aware that CAAIG had to be invading the Plaintiffs' reserve pool to pay their attorney's fees, the Plaintiffs, who had similar access to CAAIG's books and records in discovery, may be charged with the same knowledge. While the complaint does not indicate when such knowledge would have been obtained by the parties, if that date is before September 5, 1997, three years prior to the date this action was commenced, the Plaintiffs' claims here may be barred by the statute of limitations.

Finally, the Court reminds the Plaintiffs' counsel of the continuing obligations of attorneys to comply with Fed. R.Civ.P. 11. In this regard, Rule 11(b)(3)

requires an attorney to continuously make sure that his allegations have evidentiary support. After investigation and discovery, continued prosecution of a case where it would appear to a reasonable attorney that the factual allegations cannot be supported can subject an attorney to sanctions. *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1469–70 (2d Cir.1988), *rev'd. in part on other grounds* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989); *Vega v. FAA,* 621 F.Supp. 1177, 1178 (E.D.N.Y. 1985).

### *CONCLUSION*

For the foregoing reasons, the Defendants' motion to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6) is DENIED. The parties are directed to contact the chambers of United States Magistrate Judge Michael L. Orenstein upon receipt of this order to schedule an initial conference.

**SO ORDERED.**