24-2339-cv
*Collins v. Ne. Grocery, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of August, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

---

GAIL COLLINS, DEAN DEVITO, MICHAEL LAMOUREUX, SCOTT LOBDELL, *individually, on behalf of the Northeast Grocery, Inc. 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan*,

> *Plaintiffs-Appellants*,

> v.                                                        24-2339-cv

NORTHEAST GROCERY, INC., THE ADMINISTRATIVE COMMITTEE OF THE NORTHEAST GROCERY, INC. 401(K) SAVINGS PLAN, JOHN AND JANE DOES 1-30, *in their capacities as Members of the Administrative Committee*,

1

*Defendants-Appellees.*[*]

FOR PLAINTIFFS-APPELLANTS: PAUL J. SHARMAN, The Sharman Law Firm LLC, Alpharetta, Georgia.

FOR DEFENDANTS-APPELLEES: ERIKA N. D. STANAT, Harter Secrest & Emery LLP, Rochester, New York (Michael-Anthony Jaoude, Harter Secrest & Emery LLP, Buffalo, New York, *on the brief*).

Appeal from the judgment of the United States District Court for the Northern District of New York (David N. Hurd, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on August 15, 2024, is **AFFIRMED IN PART** and **VACATED IN PART** for the reasons set forth below.

Plaintiffs-Appellants Gail Collins, Dean DeVito, Michael Lamoureux, and Scott Lobdell ("Plaintiffs"), participants in The Northeast Grocery, Inc. 401(k) Savings Plan ("the Plan"), who filed a complaint as representatives of a putative class of similarly situated persons and on behalf of the Plan itself, appeal from a judgment of the district court (Hurd, *J.*), entered on August 15, 2024, dismissing their complaint without leave to amend. Plaintiffs' suit arises from the alleged mismanagement of the Plan by the Defendants-Appellees: the Plan's sponsor, Northeast Grocery, Inc.; the Plan's administrator, the Administrative Committee of The Northeast Grocery, Inc. 401(k) Savings Plan; and the Committee's members, John and Jane Does 1-30, in violation of the

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

2

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiffs' seven-count complaint alleged that Defendants breached their fiduciary duties in managing the Plan and committed other ERISA violations in selecting and monitoring the Plan's investment options; monitoring the performance and/or expenses of the Plan's recordkeeper and investment manager; and disloyally permitting revenue-sharing arrangements with Plan service providers that resulted in excessive compensation. The district court dismissed the complaint in part for Plaintiffs' lack of constitutional standing and otherwise for their failure to state a claim. The district court did not permit Plaintiffs to amend their complaint. This appeal followed.

In a precedential opinion issued simultaneously with this summary order, we affirm the district court's dismissal of several claims on standing grounds. In this summary order, we address the district court's dismissal on the merits for failure to state a claim. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm in part.

## I. Failure to State a Claim

We review the dismissal of a complaint for failure to state a claim under Rule 12(b)(6) de novo. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021). We conclude that Plaintiffs' complaint substantially fails to state plausible claims because it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires "more than a sheer possibility that a

3

defendant has acted unlawfully," and "mere conclusory statements" do not suffice. *Id*. We have cautioned that evaluating ERISA claims requires "particular care . . . to ensure that the complaint alleges *nonconclusory* factual content raising a *plausible* inference of misconduct and does not rely on the vantage point of hindsight." *Sacerdote*, 9 F.4th at 107 (cleaned up). Here, the complaint did not withstand Defendants' motion to dismiss because it did not contain "sufficient circumstantial factual allegations to support" Plaintiffs' claims. *Id.* We thus substantially affirm the district court's dismissal of Plaintiffs' claims for breach of ERISA's duties of prudence and loyalty, prohibited transactions, breach by omission, and breach of the duty to monitor.

## A. Duty of Prudence[1]

ERISA protects plan beneficiaries by mandating that plan fiduciaries adhere to the duty of prudence, which requires that the fiduciaries discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). We evaluate prudence under an objective standard and judge the fiduciary's conduct "based upon information available . . . at the time of each investment decision and not from the vantage point of hindsight."

---

[1] We do not reach Plaintiffs' arguments that they plausibly alleged that the Committee breached its fiduciary duties by failing to investigate the availability of lower-cost, equal or better performing share classes and alternative funds, and by selecting and retaining investment options with revenue sharing and indirectly compensating the Plan's recordkeeper. We affirm the dismissal of those claims for lack of standing in a precedential opinion issued simultaneously with this summary order.

4

*Sacerdote*, 9 F.4th at 107 (quotation marks omitted).   Plaintiffs' imprudence claim fails for several reasons.

*First*, Plaintiffs failed to plausibly allege that Defendants imprudently selected and monitored the Plan's investment options because certain investment options underperformed alternatives.   A fiduciary "normally has a continuing duty . . . to monitor investments and remove imprudent ones," which includes "systematically consider[ing] all the investments . . . at regular intervals to ensure that they are appropriate." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) (cleaned up).   Plaintiffs may raise an inference of imprudent investment management by alleging facts that, if true, would demonstrate that "an adequate investigation would have revealed to a reasonable fiduciary that [an] investment at issue was improvident" or "that a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*PBGC*"), 712 F.3d 705, 718-19 (2d Cir. 2013).   Plaintiffs may not, however, rely only on after-the-fact allegations that a particular investment's value decreased or that a better alternative was available at the time of the challenged decisions. *Id.* at 718.   A fund's underperformance relative to comparator funds may support an inference of imprudence, but Plaintiffs were required to allege "*meaningful*" benchmarks against which to compare the criticized funds. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (emphasis added) (requiring that a plaintiff allege "a sound basis for comparison—a meaningful benchmark" to state a claim for imprudence based on an investment choice); *see also Singh v. Deloitte LLP*, 123 F.4th

5

88, 95-96 (2d Cir. 2024) (extending the *Meiners* "meaningful benchmark" standard to fee-based imprudence claims).   They failed to do so.

Allegations that the Fidelity Freedom 2030 Fund underperformed the T. Rowe Price 2030 Fund did not present a meaningful comparison necessary to elevate Plaintiffs' alternative funds claim from conceivable to plausible.   The complaint did not allege any factual basis from which to infer that the purported comparators were appropriate.   Plaintiffs' allegations boiled down to a conclusory assertion, informed by hindsight, that a better option was available when Defendants selected and chose to retain the Fidelity Freedom 2030 Fund, which was an insufficient assertion to state a claim.[2]   *See PBGC*, 712 F.3d at 718.

Further, allegations that the Loomis Sayles Small Cap Value Fund underperformed three benchmark indices by less than one quarter of one percent did not support an inference of imprudence.   That is not the type of "substantial underperformance over a lengthy period that gives rise to a plausible inference that a prudent fiduciary would have removed the[] fund[] from the plan's menu of options."   *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 164 (E.D.N.Y. 2022) (collecting cases).

---

[2] Plaintiffs contend the district court should not have resolved factual disputes regarding the adequacy of a comparator on a motion to dismiss and that the "overwhelming trend" among district courts is "to defer deciding the question of whether two funds are proper comparators until after discovery."   Pls.' Reply Br. at 11 (quoting *In re Omnicom ERISA Litig.*, No. 20-cv-4141, 2021 WL 3292487, at *13 (S.D.N.Y. Aug. 2, 2021)); *see also* Pls.' Br. at 19.   Deferral was not required here because Plaintiffs' conclusory factual allegations did not raise factual questions that the district court could not properly address on a motion to dismiss.

Similarly, no inference of imprudence could be drawn from allegations that the T. Rowe Price Blue Chip Fund lost 4% per year over a six-year period, and that it lagged a benchmark index by an unspecified amount over a ten-year period. That the Blue Chip Fund lost value does not, standing alone, make its selection or retention imprudent. *See PBGC*, 712 F.3d at 727 ("[A] decline in a security's market price does not, by itself, give rise to a reasonable inference that holding that security was or is imprudent."). And we cannot infer from six years of performance data, or from an unspecified magnitude of underperformance, that Defendants' decision to select or retain the Blue Chip Fund was imprudent. *See Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) ("Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision . . . that breaches a fiduciary duty.").

*Second*, the complaint did not plausibly allege that the Committee imprudently monitored fees charged by the Plan's investment advisor and recordkeeper. To state an imprudence claim arising out of excessive fees, Plaintiffs had to allege that the "challenged fees were excessive relative to the services rendered" or otherwise allege "factors relevant to determining whether a fee is excessive under the circumstances." *Singh*, 123 F.4th at 93-94 (internal quotation marks and citation omitted). The complaint, however, alleged no facts demonstrating that the fees paid to investment advisor CapFinancial Partners LLC ("CapFinancial") were excessive relative to the services CapFinancial provided or to fees paid to other investment advisors for similar services. Nor did it allege any facts supporting that recordkeeping services provided by Fidelity Management ("Fidelity") to purported comparator Molson Coors Beverage Company USA, LLC Plan were

7

"virtually identical" to the costlier services provided to the Plan.   Compl. ¶ 98, App'x 27; *see also* Compl. ¶¶ 99-102, App'x 27-28 (providing no factual allegations regarding the services Fidelity provided to four allegedly similarly-sized plans).   Plaintiffs cannot rely, as they in effect do here, on bare allegations that other plans paid lower fees.   *Singh*, 123 F.4th at 95-96; *Boyette v. Montefiore Med. Ctr.*, No. 24-1279-cv, 2025 WL 48108, at *1 (2d Cir. Jan. 8, 2025) (summary order).   Moreover, even though we agree that Defendants' alleged failure to undertake competitive bidding for recordkeeping services was probative of imprudence, that allegation was insufficient on its own to state a claim.   *See PBGC*, 712 F.3d at 719 (requiring factual allegations that are "suggestive of, rather than merely consistent with, a finding of misconduct").

*Third*, Plaintiffs argue unpersuasively that they pled circumstantial factual allegations supporting an inference that Defendants employed flawed processes in carrying out their duties. Plaintiffs contend that "[b]ecause [they] cannot possibly know the particulars of these fiduciary processes at this stage of the litigation," we must evaluate whether their circumstantial factual allegations demonstrate that the processes Defendants employed to evaluate and monitor Plan investment options and service providers, and to otherwise administer the Plan, violated Defendants' duties of prudence and loyalty.   Pls.' Br. at 3.   But we cannot accept Plaintiffs' invitation to infer from flaws in *one* investment option that the Committee's *plan-wide* decision-making was imprudent and/or disloyal and thus "affected every other choice made for the limited participant menu of 28 offerings."   *Id.* at 4 (quoting Compl. ¶ 58, App'x 19).

8

## B. Prohibited Transactions

ERISA further protects plan participants by supplementing plan fiduciaries' duty of loyalty by categorically barring "certain transactions involving plan assets that are believed to pose a high risk of fiduciary self-dealing." *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 119 (2d Cir. 2022) (internal quotation marks omitted). We vacate the district court's judgment of dismissal of Count Five and affirm the dismissal of Count Six.

*First*, we vacate the district court's dismissal of Count Five, which alleged that the Committee included and failed to remove imprudent funds, thereby causing the Plan to pay excessive and unnecessary fees to Fidelity and CapFinancial in violation of 29 U.S.C. § 1106(a). Section 1106(a) "categorically bar[s]" certain transactions between the plan and "part[ies] in interest" to it, including service providers like Fidelity and CapFinancial, that are "deemed likely to injure the pension plan." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241-42 (2000) (internal quotation marks omitted). Prohibited transactions include those, as Plaintiffs assert occurred here, that "constitute[ ] a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest" or a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(C)-(D). Section 1106(a) is subject to numerous statutory and regulatory exemptions. *See id.* §§ 1106, 1108.

To begin, we disagree with Defendants that the complaint did not allege what was used, furnished, or transferred for the benefit of the Committee and, thus, how Defendants' choice of funds resulted in the existence of any transaction. The complaint alleged that the Plan

9

compensated Fidelity directly from plan assets and indirectly from revenue sharing with plan investments, which it further alleged were selected because those investments would compensate Fidelity without needing to bill the Plan's administrators for those indirectly-compensated services. *See* Compl. ¶¶ 91-96, App'x 25-26. Its generalized allegations regarding how revenue sharing "typically" works, in context, were sufficient to support an inference that Fidelity was so compensated.[3] *See* Compl. ¶ 92, App'x 25.

Having inferred the nature of Fidelity's indirect compensation, we vacate the judgment as to Count Five in light of *Cunningham v. Cornell University*, 145 S. Ct. 1020 (2025). In *Cunningham v. Cornell University*, we held that a plaintiff asserting a violation of Section 1106(a) must allege that a fiduciary caused the plan to engage in a transaction that was "unnecessary" or that "involved unreasonable compensation" to survive a motion to dismiss. 86 F.4th 961, 975 (2d Cir. 2023) (emphases omitted) (reasoning that Section 1106(a) incorporates the Section 1108(b)(2)(A) exemption for "reasonable arrangements with a party in interest for . . . services necessary for the . . . operation of the plan, if no more than reasonable compensation is paid therefor"). The district court appears to have applied our pleading standard and dismissed Count Five on the basis that Plaintiffs failed to affirmatively allege that the services provided by and fees

---

[3] Revenue sharing is "a common method of compensation whereby the mutual funds on a defined contribution plan pay a portion of investor fees to a third party." *Tussey v. ABB, Inc.*, 746 F.3d 327, 331 (8th Cir. 2014).

charged by Fidelity and CapFinancial, respectively, were neither unnecessary nor unreasonable.[4]

While this matter was *sub judice*, however, the Supreme Court reversed our decision in *Cunningham* and abrogated our pleading standard. *See generally* 145 S. Ct. 1020 (2025). It held that to state a claim that a plan's relationship with a service provider constitutes a prohibited transaction, a participant must plausibly allege only that a plan fiduciary engaged in a proscribed transaction. *Id.* at 1032. The Court reasoned that ERISA's statutory and regulatory exemptions (including the exemption for reasonably compensated necessary services at issue here) are affirmative defenses. *Id.* at 1027-28.

Here, the district court improperly treated the unreasonableness of the compensation as a pleading requirement (in accordance with our old *Cunningham* rule) rather than treating the reasonableness of the compensation for a necessary service as an affirmative defense (as the Court's new *Cunningham* rule now requires). Accordingly, we vacate the judgment as to Count Five for further consideration in light of *Cunningham v. Cornell University*, 145 S. Ct. 1020 (2025).

*Second*, Plaintiffs failed to plausibly allege in Count Six that Defendants "deal[t] with the assets of the plan in [their] own interest" in violation of Section 1106(b). 29 U.S.C. § 1106(b)(1).

---

[4] The district court reasoned that Plaintiffs failed to plausibly allege that Defendants breached their underlying fiduciary duties, which included failing to plausibly allege that Defendants unreasonably compensated CapFinancial for unnecessary investment advising services or excessively compensated Fidelity for recordkeeping services. By extending its imprudence analysis to Plaintiffs' prohibited transaction claim, the district court seems to have "reviewed the allegations in the complaint and determined that Plaintiffs failed to plead adequate facts on which the court could conclude that the payment of fees to Fidelity or CapFinancial were unnecessary or involved unreasonable compensation." Defs.' Br. at 46.

11

Section 1106(b) protects beneficiaries against "transactions tainted by a conflict of interest and thus highly susceptible to self-dealing." *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987). We construe Section 1106(b) broadly and impose liability "even where there is no taint of scandal, no hint of self-dealing, no trace of bad faith." *Id.* (internal quotation marks omitted).

Plaintiffs' assertions that the Committee knowingly selected and failed to remove imprudent funds with the intent to "earn profit for Fidelity and CapFinancial at the expense of" participants and beneficiaries by retaining rebates from surplus revenue sharing fees from certain investment options were too conclusory. Compl. ¶¶ 198-205, App'x 46-48. Revenue sharing is a "common" and often lawful form of compensation, *Tussey*, 746 F.3d at 331, and the complaint provided no factual basis to "distinguish between ordinary compensation for services in the form of revenue-sharing payments and illicit kickbacks," *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 7 (2d Cir. 2017) (summary order).

### C. Co-Fiduciary Liability and Duty to Monitor

We affirm the dismissal of Count Three, Plaintiffs' co-fiduciary liability claim, and Count Four, Plaintiffs' duty to monitor claim. The district court dismissed both claims on the basis that they were "derivative" claims requiring an underlying breach, *Pessin v. JPMorgan Chase U.S. Benefits Exec.*, 112 F.4th 129, 143 (2d Cir. 2024), and that Plaintiffs had not plausibly alleged that the Committee breached its duties of prudence and loyalty.

We affirm the dismissal of Count Three, in which Plaintiffs asserted that the Committee was liable for participating in, and failing to prevent, the breaches of other plan fiduciaries because

12

Plaintiffs failed to plausibly allege breach of the duty of prudence and they lacked standing on their claim for breach of the duty of loyalty. *See Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 368 (2d Cir. 2014). We additionally find that our vacatur of the judgment as to Count Five does not require that we disturb the dismissal of Count Three. Section 1105 makes fiduciaries jointly and severally liable for the misconduct of *other* fiduciaries but, here, Counts Three and Five alleged breaches by the *same* fiduciary. *See* 29 U.S.C. § 1105(a).

We also affirm the dismissal of Count Four, in which Plaintiffs asserted that Northeast Grocery, as Plan sponsor, breached its fiduciary duty by failing to monitor the Committee in "[v]iolation of 29 U.S.C. § 404(a)(1)(B)." App'x 43. Section 404(a)(1)(B) imposes a duty of prudence on fiduciaries. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 411-12 (2014) (providing that § 1104(a)(1)(B) "requires the fiduciary of a pension plan to act prudently in managing the plan's assets"). Because Plaintiffs did not plausibly allege that the Committee acted imprudently, their duty to monitor claim predicated on an underlying breach of the duty of prudence failed as a matter of law.

### D. Breach by Omission

In Count Seven, Plaintiffs claimed Defendants breached their fiduciary duty by omission by failing to institute a claim against themselves (in particular, against the Committee), on behalf of the Plan, for engaging in prohibited transactions. Because Count Seven was wholly dependent on the existence of an underlying prohibited transaction (as alleged in Counts Five and Six) and the district court concluded that Plaintiffs did not plausibly allege that the Committee engaged in a

13

prohibited transaction, the district court similarly dismissed Count Seven. However, because we are vacating the judgment as to Count Five for further consideration in light of *Cunningham*, we vacate the judgment as to Count Seven for the same reason.

## II. Leave to Amend

We review a district court's denial of leave to amend the complaint for abuse of discretion. *Sacerdote*, 9 F.4th at 114. Where the district court based its denial on futility of amendment, however, we review the denial *de novo*. *See Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015). The district court did not err by denying Plaintiffs' cursory request for leave to amend.

Plaintiffs did not file a motion for leave to amend or propose a second amended complaint. Instead, their brief in opposition to Defendants' motion to dismiss contained a cursory request for leave to amend on the last page of the brief. Mem. in Opp. to Defs.' Mot. to Dismiss at 23, *Collins v. Northeast Grocery,* Dkt. No. 5:24-cv-80 (N.D.N.Y. March 25, 2024), ECF 13 ("Alternatively, this Court should grant Plaintiffs leave to amend, as amendment would not be futile."). We have repeatedly affirmed denial of leave to amend in such circumstances. *See, e.g.*, *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107-08 (2d Cir. 2022) (affirming denial of leave to replead where the party's request gave no indication about how the plaintiff would cure the pleading defects in its amended complaint); *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011) (affirming denial of leave to replead where plaintiffs requested leave to amend in their opposition brief without specifying the additional facts they might assert to cure defects in their amended complaint and failed to formally move to amend, i.e., by enclosing a proposed amended

14

complaint).   Affirmance is especially well supported when, as here, Plaintiffs did not specify in their briefs on appeal or at oral argument how they would amend their complaint to cure pleading deficiencies.   *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275-76 (2d Cir. 2006) (per curiam) (affirming denial of leave to amend where, *inter alia*, plaintiff "gave no indication" in his brief on appeal "of how he would amend or how the deficiencies could be corrected").

*          *          *

We have reviewed Plaintiffs' remaining arguments and find them to be without merit. Although we conclude that the district court properly dismissed the balance of Plaintiffs' claims, we vacate the judgment as to Counts Five and Seven, which we remand for further consideration in light of *Cunningham v. Cornell University*, 145 S. Ct. 1020 (2025).   Accordingly, we **AFFIRM in part** and **VACATE in part** the judgment of the district court and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court
