**UNITED STATES of America,
Plaintiff–Appellee,**

Sandra V. Boylan; Aidan J. Greaney; Dale D. Cochard; John R. Combes; Cynthia Crough; Robert Drake; Eddie Ewell; Roger Gilmore; Jaime Hamame; Linda Hoitt; Jerry Holladay; Marlow, Davis & Byrd; Kenyfield Ltd.; Curt Landberg; Helen Louros; William D. McPeak; Mid America Capital Trust; Ida Ruth Morehouse; Douglas Shortt; A.G. Skinner; Robert Stein; Martin Sterenbuch; Paul W. Vandermolen, Jr., **Claimants–Appellants,**

v.

**$4,224, 958.57, Defendant.**

No. 03–56681.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2004.

Filed Aug. 24, 2004.

Amended Dec. 22, 2004.

David B. Smith, Alexandria, VA, for the claimants-appellants.

Steven R. Welk, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Appeal from the United States District Court for the Central District of California; A. Howard Matz, District Judge, Presiding. D.C. No. CV–02–08594–AHM.

Before NOONAN, CLIFTON, Circuit Judges, and FOGEL,* District Judge.

NOONAN, Circuit Judge.

Sandra V. Boylan, et al. (Appellants) appeal the judgment of the district court denying them Article III standing to enter claims against the funds in this forfeiture proceeding brought by the United States. Holding that they do in fact have a cognizable legal interest in the property, we reverse the judgment against them and remand for proceedings in conformity with this opinion.

## FACTS AND PROCEEDINGS

Bringing a civil action for forfeiture, the government alleged a fraud committed on the 25 Appellants and 53 others by one James Carroll Sexton. The facts of the fraud alleged by the government are undisputed by the Appellants, and for the purposes of this appeal we assume them to be true.

In the course of 1998 and 1999, Sexton persuaded a number of persons, including the Appellants, to send him money that he would invest on their behalf. Contrary to his representations, he shuffled the money so collected through various bank accounts in Liechtenstein, which he controlled. In these acts, Sexton committed mail fraud, wire fraud and money laundering.

In 1999, Liechtenstein opened a criminal investigation into Sexton's activities. Eventually, ten of the Appellants, represented by Martin Sterenbuch, recovered $1,509,228.40 from Liechtenstein accounts controlled by Sexton.

On October 4, 2001, the United States requested the government of Liechtenstein to repatriate the remaining funds in the Sexton-controlled accounts to the United States. The letter of October 4, 2001 declared, "It is the intention of the U.S. prosecutors to seek the return of these funds to the victims of the criminal activity as restitution pursuant to a criminal prosecution or following the forfeiture of these assets." In May, 2002, a magistrate judge in Liechtenstein agreed to this request. Accordingly, between June 7, 2002 and August 5, 2002, $4,224,958.57 was transferred to an account administered by the FBI at the Bank of America in the Central District of California.

On November 20, 2002, the United States filed its first amended complaint for forfeiture of the funds. The complaint was not served on the Appellants or on other victims of Sexton's fraud.

* The Honorable Jeremy D. Fogel, United States District Judge for the Northern District of California, sitting by designation.

On February 27, 2003, Sterenbuch sent a letter to Steven R. Welk, the assistant U.S. attorney who was chief of the asset forfeiture section in the Office of the U.S. Attorney for the Central District of California, informing Welk that he was "thinking of filing individual claims" in the forfeiture case, but proposing that the matter, if possible, be resolved out of court. On March 13, 2003, Welk rejected this proposal and denied that Sterenbuch's clients had standing to assert claims.

Without notice to Sterenbuch, Welk then moved for the default judgment. On March 19, 2003, default judgment was entered by the clerk of court against Sexton; Laila Sexton; James Carroll Sexton, Jr.; and "All Potential Claimants."

On April 11, 2003, the Appellants mailed "Verified Claims" as to the defendant res to the district court. On April 16, 2003, the district court rejected the "Verified Claims" because of the March 19, 2003 default judgment.

On April 30, 2003, the Appellants moved to set aside the default. The government opposed the motion to set aside the default and contended that the Appellants lacked Article III standing.

On June 24, 2003, the district court denied the motion to set aside the default. The court held (1) that the Appellants were "unsecured creditors without the requisite ownership interest for standing"; (2) that "the facts of this case do not warrant imposition of a constructive trust" in their favor; and (3) that therefore they lacked standing in the case.

The Appellants appeal.

## ANALYSIS

■ *The Constructive Trust.* The American Law Institute, *Restatement (First) of Restitution* § 160 (1937) provides, "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." The American Law Institute, *Restatement of the Law of Restitution, California Annotations* § 160 (1940) declares: "The rule has been followed in innumerable cases." It is hornbook law that, when a fraudster acquires property from a victim by fraud, the fraudster holds the property in constructive trust for his victim. *Scott on Trusts* § 462.4 (4th ed.1989). It is an elementary mistake to suppose that a court creates the trust. The expression "the court constructs the trust" is "absurd." *Id.* The obligation on the fraudster is imposed by law and arises immediately with his acquisition of the proceeds of the fraud. As we stated the law in California:

> "Two California Civil Code sections set forth the principal constructive trust situations. California Civil Code § 2223 (Deering 1984) provides: 'One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner.'" California Civil Code § 2224 (Deering 1984) provides:

> "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it." *United States v. Pegg,* 782 F.2d 1498, 1500 (9th Cir.1986).

The transferee of the fraudster who gives no value for the property is in no better position than the fraudster; a fortiori, that is the case when the transferee is aware of the fraud. *Scott on Trusts* § 477. In the present case, the money fraudulently collected by Sexton was impressed with a constructive trust. The United States, acquiring this property by alleging Sexton's fraud, acquired it with the same trust imposed.

▮ *The Standing of the Appellants.* The government argues that the Appellants lack standing because the money in question came from a bank account in Liechtenstein, and depositors are merely general creditors of the bank with no interest in the particular funds. But the Appellants are not in competition with other creditors of the bank. That a bank depositor is only a general creditor is meaningful when the bank holding the account is insolvent and there is not enough to go around. In that situation, a depositor does not stand in front of other creditors. But that is not the situation here. The money from the Liechtenstein bank accounts has already been given over to the control of the United States government. The issue here is whether the Appellants have a claim against these "Sexton" funds. From that perspective, the Appellants are far from being depositors in a failed bank of general unsecured creditors. "In a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy. This threshold burden is not rigorous." *United States v. One Lincoln Navigator,* 328 F.3d 1011, 1013 (8th Cir. 2003). If the Appellants can prove their claims to have been defrauded by Sexton, they are the beneficiaries of the constructive trust and have, therefore, equitable interests in it. *Id.* § 462.5. They consequently have Article III standing in the proceeding for forfeiture. *See Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.,* 530 U.S. 238, 250–51, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000).

▮ *The Government's Failure to Give Notice To The Appellants.* Well before it moved for default, the government was aware through Sterenbuch of the existence of the Appellants as potential claimants. As notice was not given to parties known to the government as potential claimants, the default judgment must be set aside, and the Appellants must be heard as parties. *See Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1157 (2d Cir.1994); *United States v. Marx,* 844 F.2d 1303, 1307 (7th Cir.1988); cf. Advisory Comm. on the Fed.R.Civ.P., Report of the Civil Rules Advisory Committee (Aug. 4, 2004) (containing proposed Supplemental Rules for Certain Admiralty and Maritime Claims, new Supp. Rule G).

A reasonable inference from the record is that both the government and the district court were concerned that the Appellants may have been attempting to obtain restitution for their own losses at the expense of or to a greater extent than victims of Sexton's fraud not represented by Sterenbuch. Whether or not it has or ever had any basis in fact, this apparent concern is irrelevant to the legal question of Appellants' standing, and in any event it can be addressed by the district court in the context of the forfeiture proceedings.

*The Government's Role.* The government obtained the res on the representation to Liechtenstein that it would arrange for restitution. It acquired the res impressed with a constructive trust. It moved for forfeiture without recognizing the rights of the beneficiaries of the constructive trust. Whatever the government may have thought, its acquisition of the res did not wipe out these equitable interests.

The district court is now to administer that trust, giving notice to all potential claimants and taking steps to assure that no claimant obtains more than his or her fair share.

The judgment of the district court is REVERSED. The case is REMANDED.