**SKIN PATHOLOGY ASSOCIATES, INC., as fiduciary of The Skin Pathology Associates, Inc. 401(k) Profit Sharing Plan, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**MORGAN STANLEY & CO. INC., Defendants.**

**No. 13 Civ. 3299(AT).**

United States District Court, S.D. New York.

Signed Feb. 24, 2014.

Charles R. Watkins, Guin, Stokes & Evans, LLC, Chicago, IL, David J. Guin, Donaldson, Guin & Slate, L.L.C., Tammy McClendon Stokes, Guin, Stokes & Evans, LLC, Birmingham, AL, Jeffrey S. Nobel, Mark Peter Kindall, Schatz and Nobel PC, Hartford, CT, Robert A. Izard, Izard Nobel LLP, West Hartford, CT, Ronen Sarraf, Joseph Gentile, Sarraf Gentile LLP, New York, NY, for Plaintiff.

Eric G. Serron, Paul J. Ondrasik, Steptoe & Johnson, LLP, Washington, DC, Laura Lisa Sandoval, Michael Campion Miller, Michael D. Rips, Steptoe & Johnson, LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

ANALISA TORRES, District Judge.

In this class action, Plaintiff, Skin Pathology Associates, Inc., alleges that Defendant, Morgan Stanley & Co. Inc. ("Morgan Stanley"), engaged in a prohibited transaction in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Morgan Stanley moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is GRANTED.

## BACKGROUND

The following facts are taken from the complaint and accepted as true for the purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

Plaintiff is a corporation with its principal place of business in Birmingham, Alabama. Compl. at ¶ 19. Plaintiff sponsors and administers the Skin Pathology Associates, Inc. 401(k) Profit Sharing Plan (the "Plan") for its employees. *Id.* at ¶ 1. The purpose of the Plan is to provide retirement benefits to Plan participants. *Id.* at ¶ 22. The Plan is a typical 401(k) retirement plan similar to those offered by employers throughout the country—it provides individual accounts for each participant and pays benefits to each participant based upon the amount of money in his or her account. *Id.* at ¶ 23. Plaintiff is a fiduciary of the Plan. *Id.* at ¶ 1.

The Plan retained Morgan Stanley to serve as broker in procuring "a bundled investment/recordkeeping program" appropriate to the Plan's size, service requirements, and investment option preferences. *Id.* at ¶¶ 2, 24. Under ERISA, Morgan Stanley is a 'party in interest' with respect to the Plan. *Id.* at ¶ 3. "As a result of Morgan Stanley's actions," ING Life Insurance and Annuity Company ("ING") was retained by the Plan as its investment/recordkeeping platform provider. *Id.* at ¶ 2.

Morgan Stanley established and administers an Alliance Partner program where certain financial institutions, including ING, are designated as its Alliance Partners. *Id.* at ¶ 4. Morgan Stanley promotes and sells to its retirement plan customers, such as Plaintiff, the investment/recordkeeping programs offered by its Alliance Partners. *Id.* at ¶ 5. As consideration for serving as broker in finding an investment/recordkeeping platform, Morgan Stanley receives compensation from Plaintiff and other clients. *Id.* at ¶ 6. Over and above this compensation, some (but not all) of the Alliance Partners pay Morgan Stanley additional compensation ("Additional Compensation"). *Id.* The Additional Com-

pensation is based solely on the amount of plan assets invested with the Alliance Partner, and is purely a "pay-to-play" fee, or kickback. *Id.* at ¶¶ 6, 8. ING is one of the Alliance Partners that pays Morgan Stanley Additional Compensation. *See id.* at ¶ 30. This Additional Compensation is calculated as a percentage of plan assets invested with ING. *See id.* Thus, Morgan Stanley received Additional Compensation from ING as retirement contributions were made to the Plan and as the value of Plan assets changed. *See id.* at ¶ 31.

Plaintiff alleges that Morgan Stanley's Additional Compensation arrangement constitutes a conflict of interest, because instead of finding the best fit for the Plan, Morgan Stanley promoted Alliance Partners, like ING, that provide the "pay-to-play" fee. *Id.* at ¶¶ 9, 24. Plaintiff alleges that Morgan Stanley's receipt of Additional Compensation is a 'prohibited transaction' under ERISA § 406(a)(1)(c). *Id.* at ¶¶ 8, 54.

## DISCUSSION

### I. *Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[ ] and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* On a 12(b)(6) motion to dismiss, a district court

may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, documents possessed by plaintiffs, or documents that plaintiffs knew about and relied upon. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002). A district court considering a Rule 12(b)(6) motion must accept all factual allegations in the complaint as true, while also drawing all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns, Inc.,* 493 F.3d at 98.

### II. *Statute of Limitations*

 Plaintiffs ERISA claim must be brought within the earlier of (1) six years from the date of the "last action which constituted a part of the breach or violation" or (2) "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. The three year statute of limitations applies "when [a plaintiff] has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 193 (2d Cir.2001). "[A]ctual knowledge is strictly construed and constructive knowledge will not suffice." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.,* 710 F.3d 57, 67 (2d Cir.2013). Morgan Stanley contends that Plaintiff acquired actual acknowledge of the alleged prohibited transaction in 2007 when Plaintiff submitted to ING an application for investment/recordkeeping platform services. Morgan Stanley states that the application was accompanied by disclosure statements, which were agreed to and signed by Plaintiff. Morgan Stanley argues that one disclosure revealed that it would be receiving supplemental compensation from ING. The disclosure states:

**Fee Payments to Morgan Stanley**

All customers of Morgan Stanley receive a separate Morgan Stanley Compensation Disclosure which identifies the supplemental compensation paid to Morgan Stanley by ING in connection with your Contract. This supplemental compensation is in addition to the compensation included in this section and will not result in any additional direct charge to you by ING. By signing the Acknowledgement, Approval and Authorized Signature page of this document, you are acknowledging receipt of this separate document.

Miller Decl. Ex. 1 at 11, ECF No. 39 (bold in original). Morgan Stanley contends that by signing the disclosure, "Plaintiff clearly acknowledged and approved the very Additional Compensation that the [c]omplaint now alleges was illegal." Def. Mem. 8. Morgan Stanley does not argue that Plaintiff acquired actual knowledge from the "separate Morgan Stanley Compensation Disclosure"—which is not incorporated by reference in the complaint, and therefore cannot be considered during a motion to dismiss—but rather that the quoted paragraph itself sufficiently provided Plaintiff with actual knowledge of the facts underlying its claim. *See Miotto v. Yonkers Public Schs.*, 534 F.Supp.2d 422, 425 (S.D.N.Y.2008); Def. Reply Mem. 2.

The Court declines to address whether Plaintiff's ERISA claim survives the statute of limitations, as the action shall be dismissed on other grounds.

### III. *Prohibited Transactions*

■ ERISA establishes a comprehensive statutory scheme for the federal supervision of employee benefit plans. The stated policy of ERISA is to protect interstate commerce and the interests of employee benefit plan participants and beneficiaries by (1) requiring the disclosure and reporting to participants and beneficiaries of financial and other information; (2) establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans; and (3) providing for appropriate remedies, sanctions, and ready access to the federal courts. *See* 29 U.S.C. § 1001.

With respect to the duties and obligations of fiduciaries, Congress, in addition to establishing basic standards of care, defined certain types of transactions in which fiduciaries may not engage or cause their plans to engage. These prohibited transactions, which appear at § 406 of ERISA (29 U.S.C. § 1106), include the sale of property, the lending of money, the furnishing of services, or the transfer of assets, between a plan and a party in interest or between a plan and a fiduciary. *See* 29 U.S.C. § 1106.

Plaintiff alleges that by accepting the Additional Compensation from ING, Morgan Stanley violated ERISA § 406(a)(1)(c), which provides: "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect furnishing of . . . services . . . between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(C). As a threshold matter, Morgan Stanley argues that Plaintiff fails to state a claim under ERISA § 406(a) because no Plan assets are involved in the transaction about which Plaintiff complains—it is merely a kickback or revenue-sharing arrangement between ING and Morgan Stanley: "the [c]omplaint alleges that the Additional Compensation was *paid by ING*, not by the Plan, and there is no allegation that ING used Plan assets to pay the Additional Compensation." Def. Mem. 9 (emphasis in original). Plaintiff responds: "Morgan Stanley's argument that it was not paid out of Plan assets also fails because Plain-

tiff's ERISA claim in no way depends on or even concerns whether Plan assets are involved." Pl. Mem. 14. The Court must resolve this threshold issue.

Section 406 is designed to prevent "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Lockheed Corp. v. Spink,* 517 U.S. 882, 893, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). "What the 'transactions' identified in § 406(a) thus have in common is that they generally involve *uses of plan assets* that are potentially harmful to the plan." *Id.* (emphasis added). Several courts have held that for § 406(a) to apply, the transaction must involve use of plan assets. *See Chao v. Graf,* No. 01 Civ. 0698, 2002 WL 1611122, at *11 (D.Nev. Feb. 1, 2002) (emphasis added) (to demonstrate a prohibited transaction, one must show "(1) the person receiving the goods or plan assets is a party in interest; (2) *plan assets are involved* (in § 1106(a)(1)(C) claims); and (3) the fiduciary knew or should have known the transaction involved the transfer or furnishing of plan assets"); *Bakner v. Xerox Corp. Employee Stock Ownership Plan,* No. 98 Civ. 230, 2000 WL 33348191, at *8 (W.D.Tex. Aug. 28, 2000) ("for the provisions of § 406 to apply, there must be a transaction involving the monies, property, or other assets of the fund"); *Sutton v. Weirton Steel Div. of Nat. Steel Corp.,* 567 F.Supp. 1184, 1199 (N.D.W.Va.1983), *aff'd,* 724 F.2d 406 (4th Cir.1983) (same) (citing *Donovan v. Bierwirth,* 680 F.2d 263, 270 (2d Cir.1982)).

Turning to secondary sources, the American Law Reports article on the construction and application of ERISA prohibited transactions by plan fiduciaries states:

> The receipt of compensation for services by interested parties, either from assets of an ERISA-governed plan or from *as-sets of a third party* having some relationship to the plan, have often led to allegations that § 406 was violated by the payment or receipt of such compensation.

103 A.L.R. Fed. 10 (emphasis added). However, the only examples the article offers of ERISA violations involving non-plan assets are prohibited transactions under § 406(b)(3). ERISA § 406(b)(3) applies only to transactions between a plan and a fiduciary (not a party in interest), and explicitly contemplates and bars fiduciaries from receiving "any consideration for [their] own personal account *from any party* dealing with such a plan in connection with a transaction involving the assets of the plan." 29 U.S.C. 1106(b)(3) (emphasis added). Thus, § 406(b)(3) prohibits payment to a plan fiduciary of kickbacks or other consideration by persons having an interest in a transaction involving plan assets. *See, e.g., Whitfield v. Tomasso,* 682 F.Supp. 1287 (E.D.N.Y.1988).

Section 406(b)(3) does not support Plaintiff's argument. Section 406(b)(3) would suit Plaintiff's claim, were Morgan Stanley a plan fiduciary and not a party in interest, because Morgan Stanley is receiving a kickback from a third party (ING), and ING is a party that deals with the Plan in connection with a transaction involving Plan assets (namely, the Plan providing compensation to ING for its investment/recordkeeping platform). But here, Morgan Stanley is not serving as a fiduciary. The fact that § 406(b) explicitly prohibits kickbacks from third parties, but § 406(a) does not, suggests that § 406(a) was not designed to prohibit third-party kickbacks to parties in interest like Morgan Stanley.

Indeed, other language in § 406 supports this interpretation. Section 406(a)(1) provides that "[a] *fiduciary* with respect to a plan *shall not* cause the plan to engage

in a transaction, if he knows or should know that such transaction constitutes a direct or indirect [sale or exchange of property, lending of money, furnishing of services, transferring of assets, etc.]." 29 U.S.C. § 1106(a)(1) (emphasis added). Thus, the Supreme Court has held that "§ 406(a) imposes a duty only on the fiduciary that causes the plan to engage in the transaction." *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000). Although a fiduciary and a party in interest on the opposite side of the transaction can both be held liable for a violation, *see id.*, it would make no sense for a statute to impose a duty on a fiduciary to stop a transaction over which it has no control. The plan fiduciary here, Plaintiff, has no power to prevent ING from paying Morgan Stanley Additional Compensation; thus, logic dictates that § 406(a) does not prohibit the arrangement, as Plaintiff cannot block a transaction in which it has no involvement.[1]

Plaintiff argues that its claim does not depend on whether Plan assets are involved because it falls under section § 406(a)(1)(C), which concerns the provision of services to a plan, not § 406(a)(1)(D), which prohibits the use of plan assets for the benefit of a fiduciary. *See* 29 U.S.C. § 1106(a)(1)(D). Plaintiff is correct that use of plan assets is not a necessary condition to violate § 406(a)(1)(c). One court has found that § 406(a)(1)(c) does not require use of plan assets. *See Enright v. New York City Dist. Council of Carpenters Welfare Fund*, No. 12 Civ. 4181, 2013 WL 3481358, at *14 n. 10 (S.D.N.Y. July 10, 2013). For this proposition, *Enright* relied on a 1975 De-

partment of Labor opinion (the "DOL opinion"). *Id.* (citing Office of Pension and Welfare Benefits Program, U.S. Dep't of Labor, Op. No. 75–95, 1975 WL 4589, at *1 (Dec. 17, 1975)). The DOL opinion found that a plan, which collected dues on behalf of a union and transmitted the dues to the union, provided a service to the union. Thus, the activity fell within the scope of § 406(a)(1)(c). *Id. Enright* and the DOL opinion support the conclusion that the prohibition in § 406(a)(1)(c) against the furnishing of services between a plan and a party in interest works both ways. In other words, a plan cannot hire a party in interest to perform services (because the plan could overpay for such services against the interests of plan participants) and a plan cannot perform services for a party in interest (because the plan could be underpaid for performing such services, which would also be against the interests of plan participants). In both *Enright* and the DOL opinion, the plan was performing services on behalf of a party in interest, making it susceptible to the latter conflict. *Enright* is thus correct that plan assets need not be involved for a § 406(a)(1)(c) violation to take place because plans performing services for parties in interest may not involve plan assets.

There is another prohibited transaction under § 406(a)(1)(c) which would not implicate plan assets: a vendor performing services for a plan for free. This would also violate § 406(a)(1)(c). *See Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 637 (W.D.Wis.1979). In *Freund*, the court emphasized the absolute nature of the prohibitions in § 406(a) by looking to its legislative history. *Id.* The bill originally prohibited only party in interest transactions

---

**1.** However, a fiduciary may avoid fee-sharing arrangements between third parties and parties in interest because parties in interest are required to disclose to plan fiduciaries all direct and indirect compensation they receive. *See* 29 C.F.R. § 2550.408b–2(c)(1)(iv)(A)–(C).

which were entered into for "less than adequate consideration." *Id.* (citing Legislative History of the Employee Retirement Income Security Act of 1974 at p. 3951 (subcommittee print)). "In Conference, however, the 'adequate consideration' requirement was dropped, and the final bill prohibited all such transactions regardless of whether adequate consideration was received." *Id.* Thus, a vendor providing services to a plan for free would still be prohibited under § 406(a)(1)(c). The exception which came to replace the bill's original "adequate consideration" language provides that "[c]ontracting ... for ... services necessary for the establishment or operation of the plan" is allowed, "if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2).

Analysis of § 406(a)(1)(c) leaves the Court stuck between a rock and a hard place: the letter of § 406(a)(1)(c) does not technically require use of plan assets, but the spirit of the provision does. *See Lockheed,* 517 U.S. at 893, 116 S.Ct. 1783 ("What the 'transactions' identified in § 406(a) thus have in common is that they generally involve uses of plan assets that are potentially harmful to the plan."). However, analysis of § 408(b)(2), the reasonable compensation exemption from the § 406(a) prohibited transactions, and its accompanying regulations, puts the Court on firmer ground. It reveals that a kickback from a third party (like ING) to a service provider (like Morgan Stanley) violates the reasonable compensation exemption, *if* the kickback is not disclosed. *See* 29 C.F.R. § 2550.408b-2.

Section 2550.408b–2(c)(1)(i) provides that "[n]o contract or arrangement for services between a covered plan and a covered service provider ... is reasonable within the meaning of section 408(b)(2) ... unless the requirements of this paragraph (c)(1) are satisfied." 29 C.F.R. § 2550.408b–2(c)(1)(i). One of the requirements of paragraph (c)(1) is for covered service providers to provide to plan fiduciaries certain disclosures, regarding, among other things, the services rendered and the compensation received for those services. 29 C.F.R. § 2550.408b–2(c)(1)(iv)(A)–(C). Indeed, the service provider must disclose to the plan fiduciary a description of all direct or indirect compensation, and any compensation "paid among related parties." 29 C.F.R. § 2550.408b–2(c)(1)(iv)(C)(1)–(3). The applicable category here—compensation paid among related parties—requires:

> [a] description of any compensation that will be paid among the covered service provider, an affiliate, or a subcontractor, in connection with the services described pursuant to paragraph (c)(1)(iv)(A) of this section if it is set on a transaction basis (e.g., commissions, soft dollars, finder's fees or other similar incentive compensation based on business placed or retained) or is charged directly against the covered plan's investment and reflected in the net value of the investment (e.g., Rule 12b–1 fees).

29 C.F.R. § 2550.408b–2(c)(1)(iv)(C)(3). The regulations codify the Department of Labor's view that plan fiduciaries need adequate fee disclosure from service providers in order to assess potential conflicts of interest.[2] Thus, fee-sharing arrange-

---

**2.** *See* ¶ 4653 Statutory Exception For Reasonable Office Space or Services, Pens. Plan Guide (CCH) P 4635 (C.C.H.), 2009 WL 4318724 ("The Department of Labor has finalized the regulations that ... will enable plan fiduciaries to evaluate the reasonableness of compensation and fees directly and indirectly paid to certain service providers (including affiliates), and assess the potential for conflicts of interest that may affect the performance of a service provider. Generally, under the final rules, a service contract or arrangement would not be reasonable, for purposes of the prohibited transaction exemp-

ments, kickbacks, "soft dollars," etc. between service providers (like Morgan Stanley) and third parties (like ING) make a contract for services between plans and service providers unreasonable under § 408(b)(2) *if* they are not disclosed. *See* 29 C.F.R. § 2550.408b–2(c)(1)(i). Put differently, the cover-up is worse than the crime. Fee-sharing arrangements or kickbacks do not in-and-of themselves create a violation, but their non-disclosure does.

The Additional Compensation here falls under the third category of compensation—compensation paid among related parties. Morgan Stanley is the service provider, as it was hired to perform brokerage services for Plaintiff. ING is an affiliate of Morgan Stanley, as it participates in Morgan Stanley's Alliance Partner program. And, the Additional Compensation alleged is compensation "set on a transaction basis (e.g., commissions, soft dollars, finder's fees or other similar incentive compensation based on business placed or retained)." *See* Compl. ¶ 30 (The Additional Compensation is "calculated as a percentage of Plan assets invested by the Plans with the Alliance Partner it retains for its investment/recordkeeping platform.").

Because the complaint attacks the Additional Compensation itself and not its non-disclosure, Plaintiff has failed to state a cognizable claim. The only allegation in the complaint that sounds in non-disclosure states: "Records of Morgan Stanley's invoices and Alliance Partner payments of those invoices were not provided to Plaintiff and, upon information and belief, were not provided to Class members or the Plans." *Id.* at ¶ 32. Section 2550.408b–2(c)(1)(iv)(C)(3), however, does not require

invoices to be provided—just a description of the compensation arrangement. Indeed, it is doubtful whether Plaintiff could have survived the motion to dismiss stage even if it had pleaded allegations of non-disclosure, as it appears that it was informed in writing of the kickback about which it now complains. *See* Miller Decl. Ex. 1 at 11, ECF No. 39. ("All customers of Morgan Stanley receive a separate Morgan Stanley Compensation Disclosure which identifies the supplemental compensation paid to Morgan Stanley by ING in connection with your Contract. This supplemental compensation is in addition to the compensation included in this section and will not result in any additional direct charge to you by ING."). Accordingly, Plaintiff has failed to allege a violation of ERISA's prohibited transactions.

### CONCLUSION

For the reasons stated above, Morgan Stanley's motion to dismiss the complaint is GRANTED in its entirety. Plaintiff's cursory request for leave to amend the complaint (*see* Pl. Mem. 18) is DENIED. *See In re Tamoxifen Citrate Antitrust Litig.,* 466 F.3d 187, 220 (2d Cir.2006); *see also Malin v. XL Capital, Ltd.,* 312 Fed. Appx. 400, 402 (2d Cir.2009).

The Clerk of Court is directed to terminate the motion (ECF No. 37) and to close the case.

SO ORDERED.

---

tion authorized under ERISA for necessary plan services, unless covered service providers (including fiduciary service providers, banks, consultants, investment providers, and third party administrators) have complied with a series of new disclosure requirements.").